# In the United States Court of Federal Claims

No. 21-1693

(Filed:  11 May 2022[*])

```
*****************************************
DOLPHIN PARK TT, LLC,                    *
                                         *
                Plaintiff,               *
                                         *
v.                                       *
                                         *   Post-Award Bid Protest; Motion to
THE UNITED STATES,                       *   Complete and Supplement; Declarations;
                                         *   Depositions; Discovery; Effective Judicial
                Defendant,               *   Review; Contemporaneous Conversations;
                                         *   Motion to Strike; Out of Time Filings.
and                                      *
                                         *
IMPERIUM EQUITY PARTNERS, LLC,           *
                                         *
                Defendant-Intervenor.    *
                                         *
*****************************************
```

_Richard J. Conway_, Blank Rome LLP, with whom were _Samarth Barot_, both of Washington, DC, _Brian S. Gocial_, of Philadelphia, PA, _Michael J. Slattery_, of New York, NY, for plaintiff.

_Vijaya S. Surampudi_, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were _Brian M. Boynton_, Principal Deputy Assistant Attorney General, _Patricia M. McCarthy_, Director, _Eric P. Bruskin_, Assistant Director, all of Washington, DC, for defendant.  _Liana D. Henry_ and _Tammi Snyder-Queen_, Attorney-Advisors, Office of General Counsel, General Services Administration, of counsel.

_Diana Parks_, Curran Legal Services Group, Inc., with whom was _Hadeel N. Masseoud_, both of Marietta, GA, for defendant-intervenor.

## OPINION AND ORDER

**HOLTE, Judge**.

---

[*] This opinion was originally filed under seal pursuant to the protective order in this case on 6 May 2022, ECF No. 82.  The Court provided the parties the opportunity to review the opinion for any proprietary, confidential, or other protected information, and submit to the Court proposed redactions no later than 10 May 2022 at 5:00 p.m. (EDT). On 10 May 2022, plaintiff, the government, and defendant-intervenor filed notices stating they propose no redactions to the opinion, ECF Nos. 83, 84, 86.  The opinion is now reissued for publication.

Dolphin Park TT, LLC ("plaintiff") brings this post-award bid protest challenging the U.S. General Services Administration's ("GSA" or "government") lease award to Imperium Equity Partners, LLC ("defendant-intervenor").  Plaintiff alleges the government incorrectly determined its property failed to meet the solicitation's flood plain requirements, failed to conduct meaningful discussions, and evaluated proposals in a prejudicially disparate manner.  Pending before the Court is defendant-intervenor's two motions to strike, the government's motion to strike, and plaintiff's motion to complete and supplement the administrative record ("AR") with:  an unredacted copy of its 10 June 2021 United States Government Accountability Office ("GAO") protest record; a 22 November 2021 letter from plaintiff's broker to the GSA; a 31 January 2019 elevation certificate; screenshots from the Federal Emergency Management Agency's ("FEMA") websites; and a declaration from plaintiff's broker.  For the following reasons, the Court:  grants in part and denies in part plaintiff's motion to complete and supplement the AR; denies defendant-intervenor's first motion to strike; denies as moot the government's motion to strike; and denies as moot defendant-intervenor's second motion to strike.

## I.    Factual Background

### A.    The Request for Lease Proposals

On 17 November 2020, the GSA issued Request for Lease Proposals No. 6FL0544 ("RLP") to procure office space in Miami, Florida, for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE").  AR at 1891 (RLP cover sheet), ECF No. 51.  The RLP stated the lease would be awarded "to the responsible Offeror whose offer conforms to the requirements of this RLP and the Lease documents and is the lowest priced technically acceptable offer submitted."  AR at 1942 (RLP § 4.03(A).  Section 2.02 of the amended RLP stated "[a] Lease will not be awarded for any offered Property located within a 100-year floodplain unless the Government has determined that there is no practicable alternative."  AR at 1933 (RLP § 2.02).  Section 2.02 further stated:  "a Lease will not be awarded for any offered Property adjacent to [a] 100-year floodplain, where such an adjacency would, as determined by the [lease contracting officer], in his or her sole discretion, restrict ingress or egress to the Premises in the event of a flood, unless there is no practicable alternative."  *Id.*  Each offeror, as a part of its proposal, was required to indicate whether its property was:  (1) "in a base (100-year) flood plain"; (2) "in a 500-year flood plain"; or (3) "not in a flood plain."  AR at 636 (form 1364 within a sample lease proposal form for the RLP).

The RLP required offerors to provide documentation of their property interest in the proposed building either by providing a deed, lease, a fully executed written agreement to acquire the proposed building together with a statement from the current owner, or other "satisfactory" documentation "prior to award."  AR at 1938–39 (RLP § 3.06(D)–(E)).  The RLP further required that offerors' property interest "submittals must remain current," and offerors are "required to submit updated documents as required."  *Id.*  Offerors could obtain a deviation from the RLP requirements, but were advised:  "GSA at its sole discretion will make the decision whether or not to accept the deviation[,]" AR at 1941 (RLP § 3.06(X)); "the Government will not be under any obligation to award a Lease" to offers taking exception to or modifying an RLP provision, AR at 1942 (RLP § 4.03(C)); and, unless construed otherwise, offers containing

deviations would be considered non-compliant, AR at 2049 (GSAM § 552.270-1(c)(6), incorporated in the RLP).

**B.      Plaintiff's Proposals and Agency Discussions**

Since 2008, plaintiff has been the incumbent lessor for the RLP and submitted a proposal for the same office space it currently leases to the ATFE on 15 December 2020.  First Am. Compl. at 2 ¶ 3, ECF No. 50; AR at 678 (plaintiff's initial proposal).  In its initial proposal, plaintiff marked its property as "in a 500-year flood plain."  AR at 680.  Despite this representation, plaintiff's initial proposal included the National Flood Hazard Layer ("NFHL") Flood Insurance Rate Map ("FIRM") No. 12086C0267L, generated by the official FEMA website, which showed plaintiff's property within a 100-year flood plain.  AR at 696; Pl.'s Mot. for J. on the Admin. R. ("MJAR") at 4, ECF No. 54.  Further, plaintiff's initial proposal included an "additional remarks and/or conditions" addendum in response to item number 31 on form 1364, containing twenty terms, stating:  "This Offer is conditioned upon the following items and any lease awarded in response to the RLP shall reflect and incorporate these remarks or conditions."  AR at 681–84 (plaintiff's initial proposal conditional terms addendum).  Lastly, plaintiff's initial proposal did not mark compliance with item number 33 on form 1364, which stated the following:

> 33.    BY SUBMITTING THIS OFFER, THE OFFEROR AGREES UPON ACCEPTANCE OF THIS PROPOSAL BY HEREIN SPECIFED DATE, TO LEASE TO THE UNITED STATES OF AMERICA, THIS PREMISES DESCRIBED, UPON THE TERMS AND CONDITIONS AS SPECIFIED HEREIN, IN FULL COMPLIANCE WITH AND ACCEPTANCE OF THE AFOREMENTIONED RLP, WITH ATTACHMENTS.
>
> ☐  I have read the RLP with attachments in its entirety and am requesting no deviations.

AR at 679 (plaintiff's initial proposal).

After reviewing plaintiff's proposal, the government's broker, Megan Shulin, GSA Broker Contractor for Public Properties, LLC, sent plaintiff's broker, Edward Welbourn, CBRE First Vice President, a letter via email on 12 January 2021.  AR at 2664 (Shulin email to Welbourn).  The email stated the GSA was seeking revised proposals, advised Mr. Welbourn to "please see our request and *deficiency letter* attached," and included an attached PDF titled: "6FL0544 *Deficiency Letter* Dolphin Corporate Center."  *Id.* (emphasis added).  The attached "deficiency letter" stated, among other discussion items:  "Please confirm in which floodzone [sic] property is located."  AR at 1644 (12 January 2021 deficiency letter).  The deficiency letter also identified plaintiff's "additional remarks" addendum as an item for discussion.  *Id.*

On 15 January 2021, the government's broker, Megan Shulin, and contracting officer ("CO"), Kazi Rizvi, conducted a "negotiation call" to discuss the initial proposal with plaintiff's brokers, Edward Welbourn, CBRE First Vice President, and Timothy Hutchens, CBRE Executive Vice President.  AR at 1644, 2664.  Following the call, on 26 January 2021, plaintiff submitted a revised proposal again marking its property as "in a 500-year flood plain," but this

time without inclusion of the FEMA map.  AR at 875 (plaintiff's first revised proposal). Plaintiff's revised proposal also did not revise item numbers 31 and 33 on form 1364, although, like the map, plaintiff left out the addendum.  AR at 874 (plaintiff's revised proposal's item number 31 still stating, "[s]ee additional remarks or conditions included as part of this offer[,]" without the addendum attached, and item number 33 remaining unmarked).

On 1 February 2021, Megan Shulin emailed Edward Welbourn once again, this time requesting "Final Proposal Revisions."  AR at 2667.  The email's subject line stated, "Request for Final Offers," and included a PDF attachment titled:  "6FL0544 Request for FPR_Dolphin Corporate Center."  *Id.*  The attachment advised plaintiff of a "negotiation call . . . scheduled to discuss your revised offer . . . [and] will include a complete review of your revised proposal." AR at 1650 (1 February 2021 request for FPRs).  The attachment identified one specific discussion item:  "Pricing and concessions to be discussed."  *Id.*  On 9 February 2021, after the negotiation call, plaintiff once again revised its proposal.  AR at 1001 (plaintiff's second revised proposal).  This time, plaintiff indicated its property is "in a base (100-year) flood plain" without including the FEMA map.  AR at 1003.  Plaintiff's second revised proposal again did not revise item numbers 31 and 33 on form 1364, and again left out the "additional remarks or conditions" addendum.  AR at 1002.

On 11 March 2021, GSA issued an amended RLP and requested "Final Offers."  AR at 2671 (Shulin email to Welbourn).  On 18 March 2021, plaintiff submitted its third revised proposal, this time:  indicating its property is "in a base (100-year) flood plain" for the second time, AR at 1009; reintroducing the FEMA map from its initial proposal showing its property in a 100-year flood plain, AR at 1053; leaving item numbers 31 and 33 on form 1364 unchanged from all previous submissions, AR at 1008; and reintroducing the "additional remarks and/or conditions" addendum from its initial proposal, AR at 1010–13.  In sum, plaintiff had four separate opportunities to modify its entire proposal:  (1) the 15 December 2020 initial proposal; (2) the 26 January 2021 opportunity to revise proposals; (3) the final proposal revisions on 9 February 2021; and (4) the revised final proposal revisions on 18 March 2021.  Gov't MJAR at 5, ECF No. 63.

### C.    Plaintiff's Post-Award Submissions

"On [or about] 15 May 2021, GSA's broker, Meg Shulin, informed [plaintiff]'s broker, Edward Welbourn, that GSA considered [plaintiff]'s proposal to be technically unacceptable since its proposed site resided in the 100-year flood plain."  Pl.'s MJAR at 5 (citing AR at 2674 (Welbourn 17 May 2021 email to Shulin following up on a 14 May 2021 phone call)).[1]  On 17 May 2021, plaintiff's broker sent the government's broker two documents:  (1) a 22 January 2009 FEMA Letter of Map Revision Based on Fill (LOMR-F), Case No. 09-04-0817A; and (2) an elevation certificate dated 31 January 2019.  AR at 2674–78 (Welbourn 17 May 2021 emails to Shulin); First Am. Compl. at 23 ¶ 82 (citing Ex. C at 78–86, ECF No. 50-1 (LOMR-F and 31 January 2019 elevation certificate)).  Plaintiff's broker's email stated:  "The lessor informed us[]

---

[1] Although plaintiff's MJAR states GSA's broker informed its broker of plaintiff's proposal's unacceptability on 15 May 2021, plaintiff only cites a 17 May 2021 email Welbourn sent Shulin that mentions the email is "[f]ollowing our call on Friday, [14 May 2021]."  Plaintiff received the official notice on 31 May 2021.  Pl.'s MJAR at 6 (citing AR 2344–45 (GAO protest)).

that the Building is not in either the 100-year or 500-year floodplain and forward[ed] the attached [LOMR-F] to us." AR at 2674.  The email continued:  "Very excited to be able to inform you that our Offer on behalf of [plaintiff's property] is fully compliant with the requirements of RLP No. 6FL0544 that states the building not be located in the 100 year floodplain."  *Id.*  Upon receiving these documents, the government's broker emailed the CO and stated they sent GSA's Regional Environmental Program Specialist, Ashish Desai, "multiple emails . . . months ago for him to do a [floodplain] check on this property and nothing came back from him."  AR at 2674–75 ("If Ashish had responded to our inquiries to do a floodplain check months ago[,] we wouldn't be blindsided.");  *see* Pl.'s MJAR at 5.

Jamie Thompson, Acting Branch Chief for the Florida Leasing Division of the GSA, also received the documents from Megan Shulin.  AR at 2675–77.  Mr. Thompson noted the documents were received after the deadline for revised FPRs, and in short shrift determined they would not have affected the outcome of the lease procurement any way.  *Id.*  The government's broker concurred.  *Id.*  On 26 May 2021, the government awarded the lease to defendant-intervenor.  Gov't MJAR at 12.  "On 31 May 2021, [plaintiff] received a Notice to Unsuccessful Offeror Letter stating [plaintiff]'s proposal was technically unacceptable since the '[b]uilding location and ingress and egress to the Premises are within the 100-year flood-zone and there has been a practicable alternative identified that can meet the Government's requirements, per RLP Section 2.02.'"  Pl.'s MJAR at 6 (citing AR 2344–45 (GAO protest)).

### D.    Plaintiff's Bid Protests and the Government's Corrective Actions

On 10 June 2021, plaintiff filed a bid protest with the GAO.  AR at 2335 (GAO protest). Plaintiff submitted to the GAO the FEMA LOMR and a 10 June 2021 Rogers Gray Insurance Flood Specialist report to demonstrate its property and the surrounding area is not in a 100-year flood plain.  Pl.'s MJAR at 6–7.  On 7 July 2021, the government filed a notice of corrective action, and on 11 August 2021, the GAO dismissed plaintiff's protest.  *Id.* at 7.  On 13 August 2021, plaintiff filed the bid protest currently pending before the Court.  *See* Compl., ECF No. 1. On 7 September 2021, the government filed a notice of corrective action to reevaluate proposals and make a new award decision.  *See* Order, ECF No. 26; Gov't MJAR at 13.  "During the course of the corrective action, GSA determined that discussions were not necessary, and it accordingly did not ask offerors to submit revised proposals."  Gov't MJAR at 13.

On 22 November 2021, plaintiff, unsolicited by either the Court or the government, filed a notice of the documents it submitted to the CO for consideration during corrective action.  *See* Notice, ECF No. 40.  Plaintiff's submission to the government included a letter with nine exhibits "to provide GSA with the necessary data to correctly determine as part of its re-evaluation of offers that [plaintiff]'s proposed [property], as well as vehicular access to and from the [p]roperty, meet the flood plain requirements of the RLP."  *Id.* at 1.  The government did not consider plaintiff's submission because it determined "reopening discussions and inviting a fifth round of proposal revisions for the corrective action was not necessary."  Gov't MJAR at 14 (citing AR at 2374 (CO memo reaffirming award to defendant-intervenor)).  The government reaffirmed its award to defendant-intervenor on 17 January 2022.  Gov't Notice at 2, ECF No. 41. On 21 January 2022, the government sent plaintiff a notice of unsuccessful offeror letter stating plaintiff's proposal was technically unacceptable because of three conditions plaintiff

placed on its offer in its "additional remarks and/or conditions" addendum, and because its property is located in a 100-year flood plain.  Pl.'s MJAR at 9.

## II.  Procedural History

### A.  Plaintiff's Motion to Complete and Supplement the AR

Following completion of the government's corrective action, on 14 February 2022, the Court entered the parties' proposed briefing schedule.  *See* Order, ECF No. 49.  Per the briefing schedule, plaintiff filed a first amended complaint on 14 February 2022, ECF No. 50.  On 28 February 2022, the government filed the AR, ECF No. 51.  On 21 March 2022, plaintiff filed a motion to complete and supplement the AR, ECF No. 53, MJAR, and a motion for permanent injunction, ECF No. 54.  Plaintiff's motion to complete and supplement the AR sought to include in the AR:  an unredacted copy of its 10 June 2021 GAO protest record; the 22 November 2021 letter from CBRE to the GSA; the 31 January 2019 elevation certificate; screenshots from FEMA's websites; and a declaration from plaintiff's broker, Edward Welbourn, related to the 15 January 2021 and 5 February 2021 discussions ("the discussions") the agency had with plaintiff. *See* Pl.'s Mot. to Suppl.  On 4 April 2022, the government filed its response to plaintiff's motion to complete and supplement the AR, ECF No. 59, and on 8 April 2022, the government filed its cross-MJAR and response to plaintiff's MJAR and motion for permanent injunction, ECF No. 63.[2]  Also on 8 April 2022, defendant-intervenor filed a motion to dismiss, a cross-MJAR, and a response to plaintiff's MJAR and motion for permanent injunction, ECF No. 64, and plaintiff filed a reply in support of its motion to complete and supplement the AR, ECF No. 60.  The Court determined a decision on plaintiff's motion to complete and supplement the AR may be necessary before reaching the merits of the parties' cross-MJARs, so the Court stayed the deadlines for the parties' MJAR reply briefs and all briefing on defendant-intervenor's motion to dismiss.  *See* Order, ECF Nos. 58, 65.

On 12 April 2022, the Court held a telephonic status conference with the parties, during which the parties seemingly reached agreement on all issues contained in plaintiff's motion to complete and supplement the AR.  *See* Order, ECF No. 65.  On 15 April 2022, after a meet and confer, the parties submitted a joint status report ("JSR") summarizing their agreement to include everything except the screenshots in the AR, subject to certain stipulations and the government submitting its own competing declarations.  *See* JSR, ECF No. 67.  The parties requested oral argument on the inclusion of the screenshots.[3]  *Id.*  The Court accordingly scheduled oral argument, ordered the government to file the agreed upon supplement to the AR, and granted the government and plaintiff leave to file declarations in advance of the proceeding from:  the government's broker, Megan Shulin; the CO, Kazi Rizvi; and plaintiff's second broker, Timothy Hutchens.  *See* Order at 2, ECF No. 68.  On 26 April 2022, the government filed the supplement to the AR, ECF No. 70, and declarations from the government's broker and CO, ECF No. 69.

---

[2] Despite the Court's order for "[t]he government *and defendant-intervenor* [to] file their responses to plaintiff's motion to complete and supplement the AR" by noon on 4 April 2022, defendant-intervenor filed no such response. Order at 2, ECF No. 58 (emphasis added).

[3] Despite its failure to lodge a single objection to plaintiff's motion or the agreement discussed during the 12 April 2022 status conference, defendant-intervenor requested oral argument on all elements of plaintiff's motion to complete and supplement the AR, alleging the parties' agreement was moot.  *See* JSR, ECF No. 67.

On 27 April 2022, plaintiff filed a declaration from its second broker, Timothy Hutchens, ECF No. 71.

On 28 April 2022, the Court heard oral argument on plaintiff's motion to complete and supplement the AR.  *See* Order, ECF No. 68; Oral Argument Tr. ("Tr."), ECF No. 74.  During the proceeding, plaintiff and the government agreed all four of the parties' declarations should be included within the administrative record.[4]  Tr. at 42:19–43:20, 46:14–18; s*ee* ECF Nos. 69, 70-3, 71.  Due to conflicts between the parties' declarations, plaintiff requested the opportunity to conduct depositions of the parties' declarants to determine what occurred during the discussions.  Tr. at 55:12–17; *see also* JSR at 3, ECF No. 67.  In response to the Court's inquiry, plaintiff revealed there was nothing in the record providing any detail of the contents of the discussions.  Tr. at 51:15–53:16.  The government stated it "does not believe depositions . . . or further discovery is necessary," but continued:  "[The declarations] may raise conflicting statements.  There's certainly conflicts between the depiction from Edward Welbourn[] and Megan Shulin."  Tr. at 55:21–56:11.  Though the government objected to the need for any discovery and "object[ed] to taking these depositions," the government agreed "there can be some level of agreement and that the parties can submit a notice or a status report to the Court" proposing a limited discovery outline.  Tr. at 91:16–21, 96:12–17.  The Court then issued an order suggesting plaintiff and the government meet and confer to submit a joint status report proposing an outline of limited discovery into the discussions.  Order at 2, ECF No. 72.  After a meet and confer, on 3 May 2022, the parties submitted a joint status report proposing an outline of limited discovery into the discussions to aid the Court in reaching a decision on the motion to supplement and the proper scope of any discovery, should the Court grant the motion.  *See* JSR, ECF No. 77 (the government also restated its objections to discovery and noted it would not take any depositions even if depositions were allowed for plaintiff).

### B.    Additional Filings

Following the 28 April 2022 oral argument, the parties took it upon themselves to file six more briefs for the Court's consideration in ruling on plaintiff's motion to complete and supplement the AR.  On 3 May 2022, plaintiff filed a "notice of additional authority" to support its motion to supplement the AR with the screenshots, and defendant-intervenor filed a motion to strike all the items for which plaintiff seeks supplementation.  *See* Pl.'s Notice, ECF No. 76; Def.-Int.'s Mot. to Strike, ECF No. 75.  On 4 May 2022, the government filed a motion to strike plaintiff's notice of additional authority as an improper surreply, to which plaintiff responded on 5 May 2022, and the government replied in support on 6 May 2022.  *See* Gov't Mot. to Strike, ECF No. 78; Pl.'s Resp. Gov't Mot. to Strike, ECF No. 79; Gov't Mot. to Strike Reply, ECF No. 81.  Defendant-intervenor filed a second motion to strike on 5 May 2022, which, with striking similarity to the government's motion, argues plaintiff's notice of additional authority is an improper surreply.  *See* Def.-Int.'s 2nd Mot. to Strike, ECF No. 80.

Plaintiff's notice of additional authority, though characterized as a notice and not a surreply, contains further argument and exhibits in support of its motion to complete and supplement the AR with its FEMA website screenshots.  *See* Pl.'s Notice.  Plaintiff's notice does

---

[4] Defendant-intervenor objected.

not allege its "additional authority" was not in existence at the time of its motion to complete and supplement the AR; rather, plaintiff simply puts forth more argument and more exhibits to further those it already made in its motion. *Id.* More importantly, plaintiff does not cite a provision in the Rules of the Court of Federal Claims ("RCFC") which allows a party to file a notice of additional authority in support of a motion without first obtaining the Court's leave. *Id.* Accordingly, the Court construes plaintiff's "notice of additional authority" as a surreply in support of its motion filed without leave of Court. *Id.* Both the government and defendant-intervenor's motions to strike agree with the Court's interpretation of plaintiff's notice. *See* Gov't Mot. to Strike; Def-Int's 2nd Mot. to Strike.

Defendant-intervenor's first motion to strike is suspect as well. *See* Def.-Int.'s Mot. to Strike. Though characterized as a motion to strike, the filing is directly responsive to each of the items listed in plaintiff's motion to complete and supplement the AR. *Id.* To the extent defendant-intervenor is responding to plaintiff's motion, defendant-intervenor's opportunity was when the Court ordered it to do so.[5] Order at 2, ECF No. 58; *see supra* note 2. Further, defendant-intervenor's arguments in its first motion to strike are, again, strikingly similar to those put forth by the government's timely response in opposition to plaintiff's motion. *Compare* Def.-Int.'s Mot. to Strike *with* Gov't Suppl. Resp., ECF No. 59. Along with responding to plaintiff's motion to complete and supplement the AR, defendant-intervenor's motion also requests the Court strike the declaration from plaintiff's second broker, Timothy Hutchens, and the screenshots contained *within* plaintiff's MJAR. Def.-Int.'s Mot. to Strike at 7–9. Accordingly, the Court construes defendant-intervenor's motion to be an out-of-time response in opposition to plaintiff's motion, filed without leave of Court, and a motion to strike Timothy Hutchen's declaration and plaintiff's MJAR screenshots.

## III.   Legal Standards for Supplementing the Administrative Record

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011) (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349–50 (1997)). "[T]o perform an effective review pursuant to the [Administrative Procedure Act ('APA')], the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "[A]gencies 'exercise some judgment in furnishing the court with the relevant documents'" in the agency record for the Court to review. *Joint Venture of Comint Sys. Corp.*,

---

[5] At the 28 April 2022 oral argument, the Court raised this concern with defendant-intervenor when counsel suggested she would be filing this motion to strike. Tr. at 89:23–90:18 ("THE COURT: So is it . . . a brief in opposition to Plaintiff's motion to supplement certain items but just filed out of time now? [DEF.-INT.]: I don't know that they're out of time. We're having a hearing now. . . . THE COURT: Well, they were related to what Plaintiff motioned to supplement, right? [DEF.-INT.]: Right. THE COURT: And when was the response due on that? [DEF.-INT.]: I believe . . . April 4th. THE COURT: Okay. But Intervenor did not file a response opposition then? [DEF.-INT.]: Correct. THE COURT: Yeah. So again, I think it sounds like [an opposition to] the motion to supplement.").

100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 350). "Granting agencies the authority to retroactively create an administrative record once the adversarial process has commenced, however, 'may preclude the "substantial inquiry" and "thorough, probing, in-depth review" the court must perform' in bid protests." *Id.* (quoting *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)). As a result, "[i]n order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence . . . aimed at determining . . . whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action." *Cubic Applications, Inc.*, 37 Fed. Cl. at 350.

The Federal Circuit established the standard for supplementation of the administrative record in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009). In *Axiom*, the Federal Circuit explained, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735). When performing this analysis, the Court is "required to explain why the evidence omitted from the record frustrate[s] judicial review as to the ultimate question of whether the award . . . was arbitrary and capricious." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (citing *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379–80). The administrative "record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record-such as . . . the content of conversations." *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343–44 (2004) (footnotes omitted).

## IV.   Analysis

Plaintiff motions to complete and supplement the AR with five items:

(1) an unredacted copy of plaintiff's 10 June 2021 GAO protest record;

(2) the 22 November 2021 letter from plaintiff's brokers to the government's CO ("November letter");

(3) the 31 January 2019 elevation certificate associated with plaintiff's property ("elevation certificate");

(4) online screenshots from FEMA's glossary, FEMA's NFHL Viewer, and FEMA's Map Service Center ("MSC") FIRM Map Generator (collectively, "the screenshots"); and

(5) the declarations of Edward H. Welbourn IV, Timothy C. Hutchens, Kazi Rizvi, and Megan V. Shulin (collectively, "the declarations").

*See* Pl.'s Mot. to Suppl.; Tr. at 46:14–18. Plaintiff further requests limited depositions of the declarants related strictly to the discussions. Tr. at 55:12–17; *see also* JSR at 3, ECF No. 67.

### A.   Supplementing the AR with the GAO Protest Record

Plaintiff argues its unredacted GAO protest record should be included in the AR in full because "Paragraph 22(u) of section VII of RCFC Appendix C identifies as 'core documents' to be included in the Administrative Record of a bid protest, 'the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the procurement.'"  Pl.'s Mot. to Suppl. at 4.  "This Court has routinely interpreted paragraph 22 as requiring the procuring Agency to include unredacted copies of prior GAO protests in the Administrative Record of protest matters filed in this Court."  Pl.'s Suppl. Reply at 1, ECF No. 60 (citing three decisions of this court).  The GAO protest record demonstrates, according to plaintiff, its property is not in a 100-year flood plain and the government knew this as early as 10 June 2021. Pl.'s Mot. to Suppl. at 5.  Plaintiff claims it also shows the government conducted an incomplete and inaccurate flood plain analysis of its property.  Pl.'s Suppl. Reply at 2–4.  Plaintiff asserts the government should have considered its GAO protest record when it took its first corrective action on 9 July 2021 and posits the failure to consider the documents constitutes evidence of disparate treatment.  Pl.'s Mot. to Suppl. at 5–6.  The documents, according to plaintiff, reveal the agency's decision-making process, fill gaps in the AR, and aid effective judicial review, thus justifying their supplementation.  Pl.'s Suppl. Reply at 4–7, 9–10.

The government and defendant-intervenor both assert the "record" in a GAO protest does not necessarily include the protest complaint and its exhibits.  Gov't Suppl. Resp. at 10–11, ECF No. 59; Def.-Int.'s Mot. to Strike at 6–7.  They both argue a GAO protest record actually refers to the agency report the government creates upon receipt of a GAO protest, which includes:  "the contracting officer's statement of the relevant facts, [(]including a best estimate of the contract value), a memorandum of law, and a list and a copy of all relevant documents."  Gov't Suppl. Resp. at 10 (quoting 4 C.F.R. § 21.3(d) (2018)); Def.-Int.'s Mot. to Strike at 6 (same).  The government never filed an agency report and the GAO never issued a decision in the GAO protest because the government elected to take corrective action—thus, according to both the government and defendant-intervenor, "a 'record' of the GAO Protest does not exist."  Def.-Int.'s Mot. to Strike at 6; *see* Gov't Suppl. Resp. at 10–11.  The government and defendant-intervenor both assert the GAO protest record is not necessary for effective judicial review.  Def.-Int.'s Mot. to Strike at 7; Gov't Suppl. Resp. at 11.  The government continues:  there is no dispute plaintiff did not submit its GAO protest documents with any of its bid proposals; the Court is not to conduct a de novo flood plain review; the CO is presumed to act in good faith; one of the documents constitutes an improper expert report; and the Court need not review the substance of the documents to review plaintiff's disparate treatment claim.  Gov't Suppl. Resp. at 11–14 (citations omitted).  The government withdrew its opposition to supplementing the AR with the unredacted GAO protest record "for the limited purpose of deciding whether [plaintiff] timely submitted [GAO] Protest Exhibits I and L, and whether GSA should have considered them, and, if so, following any briefing considering the Court's ruling in that regard, whether their consideration undermines the agency's award decision."  JSR at 2, ECF No. 67.  Plaintiff agreed to this stipulation.  *Id.*

RCFC Appendix C, which establishes the procedure for bid protest cases, lists examples of the possible "relevant core documents" which should be produced in the administrative record, including, in relevant part, "the record of any previous administrative or judicial proceedings relating to the procurement, including the record of any other protest of the

procurement." RCFC App. C ¶ 22(u). "Documents such as these 'presumptively qualify for inclusion in the Administrative Record.'" *ARKRAY USA, Inc. v. United States*, No. 14-233C, 2014 WL 2905151, at *2 (Fed. Cl. June 5, 2014) (quoting *Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 303 (2013)); *see also Bannum, Inc. v. United States*, 89 Fed. Cl. 184, 188 (2009) ("[T]his Court's rules explicitly provide for the inclusion of the record before the GAO, to the extent it is more extensive, to the administrative record."); *Holloway & Co., PLLC v. United States*, 87 Fed. Cl. 381, 392 (2009) ("It would be strange for this court to be addressing a protest on a more truncated record than that which had been before GAO."). "Any additional documents within the administrative record must be produced at such time as may be agreed to by the parties or ordered by the court." RCFC App. C ¶ 24.

Defendants argue 4 C.F.R. § 21.3(d) defines or limits the RCFC's reference to "the record of any previous administrative or judicial proceedings." Gov't Suppl. Resp. at 10; Def.-Int.'s Mot. to Strike at 6. Title 4, Section 21.3, of the Code of Federal Regulations concerns the GAO's obligations to notify all interested parties of a newly filed protest, the agency's obligations to file a report with the GAO in response to a protest, and the timing to submit comments on the agency report to the GAO. *See* 4 C.F.R. § 21.3(d). The regulation is completely silent as to what is or is not appropriate GAO protest material for inclusion in an AR. *Id.* It does not define or discuss what the scope of a GAO protest "record" is, and it does not mention the Court of Federal Claims or administrative records in any capacity. *Id.* On its face, the regulation is inapposite to the question before the Court. Defendants cite no authority to support this position and the Court's own survey of the caselaw revealed none. Indeed, the *only* case cited by either the government or defendant-intervenor held "it was *not improper* for defendant to include the record of the GAO protest in the original administrative record." *Chromalloy San Diego Corp. v. United States*, 145 Fed. Cl. 708, 728 (2019) (emphasis added) (describing the record as inclusive of much more than just the agency report); *see* Gov't Suppl. Resp. at 11 (citing *Chromalloy San Diego Corp.*, 145 Fed. Cl. at 729).

The government purports inclusion of the unredacted GAO record "would turn *Pitts, Axiom*, and judicial focus on the *agency's record* on its head." Gov't Suppl. Resp. at 12. The government's concerns, though valid, are misplaced. This court has considered the issue of including GAO protest records in the AR as "core documents" under the RCFC before. *See, e.g., Holloway & Co.*, 87 Fed. Cl. at 392; *Bannum, Inc.*, 89 Fed. Cl. at 188; *Chromalloy San Diego Corp.*, 145 Fed. Cl. at 728. In each of these cases, the court contemplated whether "RCFC Appendix C, ¶ 22(u) might be viewed as being inconsistent with the record-review task with which this court is charged . . . [because the GAO] typically receives extra-record argumentative and evidentiary submissions from both the agency and the protestor." *Holloway & Co.*, 87 Fed. Cl. at 392 ("[A] protestor may also use a GAO protest to adduce evidentiary materials that perhaps should have been, but were not, presented to the agency before it reached a decision on an award."); *see Bannum, Inc.*, 89 Fed. Cl. at 188 ("Indeed, a protestor may use a GAO protest to submit evidentiary materials that were not presented to the agency before it reached a decision on an award."); *Chromalloy San Diego Corp.*, 145 Fed. Cl. at 728. With this concern in mind, this court has held "[a] receiving court must be wary of such situations, but that skeptical role is not unusual for a court. . . . RCFC Appendix C, ¶ 22(u) consequently serves the salutary purpose of ensuring that the full record of all proceedings related to the procurement is before the court for review, even if parts of the record may be of limited utility." *Holloway & Co.*, 87 Fed. Cl. at

392; *Bannum, Inc.*, 89 Fed. Cl. at 188; *Chromalloy San Diego Corp.*, 145 Fed. Cl. at 728; *contra Allied Tech. Grp., Inc. v. United States*, 92 Fed. Cl. 226, 230–31 (2010) ("Inclusion of documents in the record of a GAO protest is not an automatic ticket that the same documents will be added to the administrative record before the Court.").

The Court finds the unredacted GAO protest record should be included in the AR as a "relevant core document" under RCFC Appendix C, ¶ 22(u).  Accordingly, the Court grants plaintiff's motion to complete and supplement the AR with the unredacted GAO protest.  The Court cautions plaintiff, however, that review of this bid protest is limited "to the record actually before the agency."  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380.  Any argument or citation to these documents that seeks to "convert the 'arbitrary and capricious' standard into effectively de novo review" will not be considered.  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735); *Chromalloy San Diego Corp.*, 145 Fed. Cl. at 728 ("[T]he court is mindful that 'the focal point for judicial review should be the administrative record already in existence,' in other words, the materials developed and considered by the agency in making the decision subject to judicial review." (citations omitted)).  As such, the Court finds plaintiff's and the government's agreed-upon stipulation as to the scope of review of the GAO protest record, reached during the 12 April 2022 status conference, ECF No. 65, and memorialized in the parties' 15 April 2022 JSR, ECF No. 67, to be appropriate.  The Court will consider plaintiff's unredacted GAO protest record "for the limited purpose of deciding whether [plaintiff] timely submitted [GAO] Protest Exhibits I and L, and whether GSA should have considered them, and, if so, following any briefing considering the Court's ruling in that regard, whether their consideration undermines the agency's award decision."  JSR at 2, ECF No. 67.

**B.     Supplementing the AR with the November Letter and the Elevation Certificate**

According to plaintiff:

On November 22, 2021, Tim Hutchens and Edward H. Welbourn of CBRE, Inc. sent a letter to Kazi S. Rivzi, GSA Lease Contracting Officer.  The letter was Dolphin's response to GSA's determination to take Correction Action with respect to its initial award decision pursuant to RLP 6FL0544.  These documents should be included in the Administrative Record because are considered "core" under Appendix C, and demonstrate that Dolphin provided GSA with comprehensive evidence that Dolphin's building, parking lot, and access thereto did not reside in the floodplain well before GSA completed the corrective action it took during the U.S. Court of Federal Claims protest between October 18, 2021 and January 20, 2022.

Pl.'s Mot. to Suppl. at 9 (citing *ARKRAY USA, Inc.*, 2014 WL 2905151, at *2 (holding that the non-exhaustive list of core document in Appendix C "presumptively qualify for inclusion in the Administrative Record").  Plaintiff argues the documents demonstrate its property is not in a flood plain, are evidence of the government's decision-making process, are evidence of disparate treatment, constitute correspondence between the agency and protestor, and qualify as core documents.  Pl.'s Mot. to Suppl. at 9–11; Pl.'s Suppl. Reply at 15–18.  Plaintiff argues its

elevation certificate should likewise be supplemented because: "(1) it demonstrates that [plaintiff]'s building site and parking lot do not reside within the 100-year[] floodplain; and (2) [plaintiff] provided this document to GSA prior to the Agency's January 2022 award decision as an exhibit to [plaintiff]'s Complaint . . . ." Pl.'s Mot. to Suppl. at 13.

The government responds it was "neither required nor permitted" to consider plaintiff's November letter during the corrective action. Gov't Suppl. Resp. at 15. The FAR, the RLP, and this court's precedent prohibit the CO from considering untimely submissions as improper discussions, according to the government. *Id.* at 15–16 (citing AR at 1937 (RLP); FAR § 15.307(b) (2014); *Dubinsky v. United States*, 43 Fed. Cl. 243 (1999)). The government states the CO has discretion on whether to hold discussions, and because the CO did not hold discussions and consider the November letter, it is inherently not a part of the AR. *Id.* at 16–17. The government contends the November letter also is not evidence of disparate treatment, mere correspondence is not automatically a core document, and plaintiff cannot use this bid protest to modify its technically deficient proposal. *Id.* at 17–18. Defendant-intervenor concurs with the government. Def.-Int.'s Mot. to Strike at 7. The government's response brief failed to address the elevation certificate. *See* Gov't Suppl. Resp. Defendant-intervenor repeats the same arguments for the elevation certificate as it put forth for supplementation of the November letter. Def.-Int.'s Mot. to Strike at 7.

Following a status conference on plaintiff's motion, the government withdrew its opposition to supplementing the AR with the November letter and the elevation certificate "for the limited purpose of deciding whether [plaintiff] timely submitted them and whether GSA should have considered them, and, if so, following any briefing considering the Court's ruling in that regard, whether their consideration undermines the agency's award decision." JSR at 3, ECF No. 67. Plaintiff agreed to this stipulation. *Id.* at 2.

The following facts are undisputed: plaintiff's final revised proposal was due "no later than March 18, 2021 by 5:00 PM Eastern Standard Time[,]" AR at 1937 (RLP § 3.02(A)(2)); plaintiff first submitted the elevation certificate to the agency on 17 May 2021, AR at 2677–78 (Welbourn email to Shulin providing elevation certificate for "review and consideration"); plaintiff submitted the November letter to the agency on 22 November 2021; *see* Notice, ECF No. 40; and at no point, either during the initial award determination or during any corrective action, did the government consider these documents in its proposal evaluations, initial award decision, or award affirmances, Pl.'s Mot. to Suppl. at 9–10, Pl.'s MJAR at 9, Gov't MJAR at 12–14.

FAR § 15.307(b) states:

The contracting officer *may* request or allow proposal revisions to clarify and document understandings reached during negotiations. At the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision. The contracting officer is *required* to establish a common cut-off date only for receipt of final proposal revisions.

(emphasis added). Where an agency accepts the submission of new information to bring an offeror's otherwise noncompliant final proposal into compliance with the RLP after the common cut-off date and does not make that opportunity available to other offerors, the agency violates FAR § 15.307(b) and engages "in improper discussions." *Dubinsky*, 43 Fed. Cl. at 262. Accordingly, if the GSA were to have accepted and considered either plaintiff's elevation certificate or November letter, both of which came months after the final cut-off date to submit proposal revisions, the GSA necessarily would have violated FAR § 15.307(b) and engaged "in improper discussions." *Id.* The agency could not—and did not—review plaintiff's elevation certificate and November letter without reopening discussions and allowing another round of revised proposals. *Id.*

With this conclusion in mind, "[i]t is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 349–50). The Court's review must comprise the "information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92. "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).

Nothing in the record suggests the agency considered plaintiff's elevation certificate and November letter when it made its initial award decision or conducted corrective action; it is undisputed the agency did not consider them. Pl.'s Mot. to Suppl. at 9–10, Pl.'s MJAR at 9, Gov't MJAR at 12–14. Plaintiff's elevation certificate and November letter were therefore not a part of "the materials that were before the agency when it made its final decision." *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166. If the documents were not "before the agency when it made its final decision," *id.*, then it is impossible for them to be considered "documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92. Even assuming the documents may demonstrate plaintiff's property is in a different flood plain than what plaintiff's own proposal stated, and what the agency determined, does not make them informative of how the agency reached its conclusion. *See id.* Rather, the "documentation revealing the agency's decision-making process," *id.*—those the agency actually relied upon and those which explain the agency's decisions—are already in the administrative record. AR at 2426–2433 (the CO's 7 December 2021 and 12 January 2022 flood plain check memos). Plaintiff asks the Court to review documents which the agency did not review and reach a conclusion the agency did not reach. Pl.'s Mot. to Suppl. at 9–13. This is precisely the type of AR supplementation the Federal Circuit was concerned with when it cautioned this Court to "guard against . . . using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). The simple fact that plaintiff emailed these documents to the agency, unsolicited, does not convert them into "core documents" under RCFC App. C ¶ 22(i) and overcome the Court's foregoing analysis. *See ARKRAY USA, Inc.*, 2014 WL 2905151, at *2

("The court has discretion to determine whether previously excluded Paragraph 22 materials should be added to the administrative record."); *Allied Tech. Grp., Inc.*, 92 Fed. Cl. at 230 ("Appendix C, ¶ 22(u) employs the words 'may' and 'as appropriate,' leaving it to the Court's reasoned discretion to determine when materials should be added to the administrative record.").

Accordingly, the Court denies plaintiff's motion to supplement the AR with the elevation certificate and November letter. *Id.* Plaintiff argues these documents are relevant to its disparate treatment claim, Count III, of its first amended complaint. Pl.'s Mot. to Suppl. at 10; *see* First Am. Compl. at 47–48. Plaintiff also agreed to stipulate the Court's review of the elevation certificate and November letter should be "limited [to] deciding whether [plaintiff] timely submitted them and whether GSA should have considered them, and, if so, following any briefing considering the Court's ruling in that regard, whether their consideration undermines the agency's award decision." JSR at 2–3, ECF No. 67. Though these documents will not be a part of the AR, and thus the Court will not review their substance, plaintiff may still argue whether the GSA disparately treated it by refusing to accept these documents, and plaintiff may still argue whether the GSA should have considered them, if it so chooses.

## C.   Supplementing the AR with Additional FEMA Website Screenshots

Plaintiff argues the AR should be supplemented with its several screenshots because they show the government "did not understand FEMA floodplain-related terminology." Pl.'s Mot. to Suppl. at 14. Plaintiff also asserts its screenshots show the government failed to properly operate the NFHL Viewer and the MSC FIRM Map Generator and are relevant to the government's decision-making process. *Id.* at 15; Pl.'s Suppl. Reply at 18–23. Plaintiff's surreply argues the government would have seen the exact same images contained in the screenshots when performing a flood plain check, though it does not argue the government received these screenshots with its several proposals or considered these screenshots when making an award decision. Notice 1–4, ECF No. 76.

The government responds:

[I]t should be clear that plaintiff's sole objective is to get this Court to review de novo whether its property is actually in the floodplain, which is inappropriate. These documents serve to further plaintiff's argument about where its property is located, not whether the agency acted arbitrary and capriciously, which is the correct standard of review before this Court.

Gov't Suppl. Resp at 19. Plaintiff did not include these screenshots in its proposals, so the government states they cannot undermine the agency's decision with respect to plaintiff's bid. *Id.* The government also argues there is no evidence the screenshots are representative of what the agency reviewed. *Id.* at 20. Lastly, plaintiff's argument with respect to FEMA definitions is a legal argument requiring no supplementation of the record to make, according to the government. *Id.* at 21. Defendant-intervenor concurs with the government. Def.-Int.'s Mot. to Strike at 8–9.

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 349–50). "[T]o perform an effective review pursuant to the [Administrative Procedure Act ('APA')], the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process." *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92 (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735). "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).

At oral argument, plaintiff's counsel conceded "the administrative record already include[s] documentation of what the agency user of the FEMA maps would have seen or did see when making a floodplain determination[.]" Tr. at 10:16–20. Plaintiff's counsel agreed "[w]e don't have screenshots from January 2021." Tr. at 24:22–24. Plaintiff's counsel also agreed it did not "submit these actual screenshots of these layers of images with [its] proposal[.]" Tr. at 26:4–6. Referring to the screenshots, plaintiff's counsel stated: "we believe the agency did not review the embedded map, although they should have." Tr. at 12:23–24. Accordingly, plaintiff's screenshots all suffer from the same infirmities as its November letter and elevation certificate. *See supra* Section IV.B. By virtue of not being a part of any of its proposals, the screenshots were not a part of "the materials that were before the agency when it made its final decision." *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166. The screenshots therefore cannot be considered "documentation revealing the agency's decision-making process," because the agency did not consider them during its decision-making. *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92. Even assuming the screenshots demonstrate plaintiff's property is in a different flood plain than what plaintiff's own proposal stated, and what the agency determined, does not make them informative of how the agency reached its conclusion. *See id.* Rather, the "documentation revealing the agency's decision-making process," *id.*—those the agency actually relied upon and those which explain the agency's decisions—are, according to plaintiff, already in the administrative record. Tr. at 10:16–20; *see* AR at 2426–2433 (the CO's 7 December 2021 and 12 January 2022 flood plain check memos).

For the foregoing reasons, the Court finds the screenshots will not aid effective judicial review and denies plaintiff's motion to complete and supplement the record with them.[6] *Axiom*

---

[6] At oral argument plaintiff cited two cases for the first time to support its motion to supplement the AR with the screenshots. Tr. at 13:2–13 (citing *Allied Tech. Grp., Inc.*, 92 Fed. Cl. 226 and *Diversified Maint. Sys., Inc. v. United States*, 93 Fed. Cl. 794 (2010)). In *Allied*, plaintiff requested supplementation of the AR with, among other things, a screenshot of a government website. The Court stated the screenshot "confirm[ed]" the awardee's "system requires the use of social security numbers through the [government] website," a practice prohibited by the Offices of Management and Budget and of Personnel Management. *Allied Tech. Grp., Inc.*, 92 Fed. Cl. at 228, 231. The Court then held "because . . . [a] screenshot w[as] available to and probably should have been reviewed by the agency in making its award decision, [it] too will be included in the Court's review of the record." *Allied Tech. Grp., Inc.*, 92 Fed. Cl. at 231. The *Allied* decision is inapposite to the case before the Court; here, unlike *Allied*, plaintiff submitted its proposal representing its property is in a 100-year flood plain and the government's evaluation

- 16 -

*Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735).  At oral argument, the government's counsel stated she does not object to the screenshot's authenticity as of the date they were created, their characterization of how the FEMA website operates, or to plaintiff's use of screenshots as visual aids in its briefing.  Tr. at 22:20–23:3.  The Court likewise informed plaintiff its substantive arguments are not "prohibited in any way from being made" without including the screenshots in the AR.  Tr. at 25:18–23.  The government also states plaintiff can make its argument with respect to FEMA's glossary definition without any supplementation of the AR.  Gov't Suppl. Resp at 21.

Defendant-intervenor also motions to strike the screenshots contained within plaintiff's MJAR, which was filed on 21 March 2022, ECF No. 54.  Def.-Int.'s Mot. to Strike at 8–9.  RCFC 12(f)(2) states:  "The court may strike from a pleading . . . on motion made by a party either *before responding* to the pleading or, *if a response is not allowed, within 21 days* after being served with the pleading."  (emphasis added).  Defendant-intervenor responded in opposition to plaintiff's MJAR on 8 April 2022, ECF No. 64, without a motion to strike.  Accordingly, the Court denies defendant-intervenor's 3 May 2022 motion to strike the screenshots from plaintiff's MJAR.  *See Marine Indus. Constr., LLC v. United States*, 151 Fed. Cl. 349, 360 (2020) (describing out of time motions to strike in violation of RCFC 12(f)(2) as deficient).  The Court denies plaintiff's motion to complete and supplement the AR with the screenshots, so the Court denies as moot the government and defendant-intervenor's motions to strike plaintiff's notice of additional authority in support of supplementing the AR with the screenshots.  *See* Gov't Mot. to Strike; Def.-Int.'s 2nd Mot. to Strike.

### D.    Supplementing the AR with the Declarations

Plaintiff's motion to complete and supplement the AR originally sought supplementation with only the Welbourn declaration.  Pl.'s Mot. to Suppl at 16.  On 15 April 2022, after a status conference and a meet and confer, plaintiff and the government agreed the Welbourn declaration should be included in the AR, along with declarations from:  the government's broker, Megan Shulin; the CO, Kazi Rizvi; and plaintiff's second broker, Timothy Hutchens.  *See* JSR, ECF No. 67; Order at 2, ECF No. 68.  The Court granted the parties leave to file the three additional

---

confirmed that representation.  AR at 2426–2433 (the CO's 7 December 2021 and 12 January 2022 flood plain check memos).  Plaintiff in this bid protest seeks to supplement the AR with screenshots to disprove the government's evaluation, which would, in effect, disprove and modify plaintiff's own proposal.  Pl.'s Mot. to Suppl. at 14–15.  Plaintiff's opportunity to submit such evidence to the agency was with its proposal.  If the agency then evaluated plaintiff's proposal and reached a conclusion opposite of what plaintiff represented, such evidence would be a part of the AR in a protest over that decision.  *See Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166.  Further, the Court found plaintiff's screenshots in this protest would not aid effective judicial review, a conclusion the court in *Allied* did not reach.  *See Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380.

In *Diversified*, the Court found there were significant inconsistencies within the AR as to the awardee's status as a small business and, if left unaddressed, could allow a "noncompliant entity" to "perform a $65 million contract obtained under false pretenses."  *Diversified Maint. Sys.*, 93 Fed. Cl. at 803–04.  The Court then held discovery was necessary to ascertain whether the awardee accurately represented itself as a small business at the time of offer and award.  *Id.*  Here, unlike *Diversified*:  plaintiff alleges there are inconsistencies with its own proposal, not the awardee's; the awardee is not a noncompliant entity; and there are no inconsistencies between plaintiff's proposal and the government's evaluation of such.  Rather, plaintiff seeks to include these screenshots in the AR to demonstrate that both its proposal and the government's evaluation are factually incorrect.  *Diversified* is unhelpful for plaintiff's motion to supplement the AR with the screenshots.

declarations which they did prior to oral argument.  *See* Order at 2, ECF No. 68; AR Suppl., ECF No. 70; Decl. of Kazi Rizvi, ECF No. 69-1; Decl. of Megan V. Shulin, ECF No. 69-2; Decl. of Timothy C. Hutchens at 3, ECF No. 71-1.

Plaintiff argues the declarations should be included in the AR because they are "first-hand account[s] of what GSA said to [plaintiff]'s representatives during the parties' discussions meetings[,]" and are core documents.  Pl.'s Mot. to Suppl. at 16.  In support of its argument that the AR is silent with respect to the content of the discussions, at oral argument, plaintiff's counsel stated:  "All four declarations should come in.  There are no contemporaneous documents in January or February . . . 2021 as to what occurred in those calls whatsoever.  Nobody took notes, nobody submitted memoranda.  The Government certainly didn't."  Tr. at 46:17–21.  Plaintiff avers the declarations "fill the gaps in the [AR]" and are "evidence of prejudice resulting from the Agency's lack of meaningful discussions."  Pl.'s Suppl. Reply at 24.

The government originally opposed supplementation with the Welbourn declaration, arguing it is "self-serving" and "unreliable."  Gov't Suppl. Resp at 21–23.  The government's counsel has since withdrawn its opposition and stated all four declarations should be in the AR because "they support what occurred during the discussions" and "are relevant to completing [sic] what had occurred by the parties who were involved at the time."  Tr. at 42:19–43:20; *see also* JSR at 2, ECF No. 67; Order at 2, ECF No. 68.

Defendant-intervenor opposed the admission of all the declarations at oral argument.  Tr. at 43:24–25.  Its "motion to strike," however, only argues plaintiff's declarations should not be included in the AR.  Def.-Int.'s Mot. to Strike at 7–8.  Defendant-intervenor argues plaintiff's declarations do not fill any gaps because they contradict their many proposals stating their property is within a flood plain.  *Id.*

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision.'" *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 349–50).  "[T]o perform an effective review pursuant to the [Administrative Procedure Act ('APA')], the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process."  *Vanguard Recovery Assistance*, 99 Fed. Cl. at 92 (citing *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420).  "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735).  "Thus, supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'"  *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735).  When performing this analysis, the Court is "required to explain why the evidence omitted from the record frustrate[s] judicial review as to the ultimate question of whether the award . . . was arbitrary and capricious."  *AgustaWestland N. Am.*, 880 F.3d at 1332 (citing *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1379–80). The administrative "record may be supplemented with (and through discovery a party may seek) relevant information that by its very nature would not be found in an agency record-such as . . . the content of conversations."  *Orion Int'l Techs.*, 60 Fed. Cl. at 343–44 (citing *Miller-*

*Holzwarth, Inc. v. United States*, 44 Fed. Cl. 156, 158 (1999) (discovery concerning content of an alleged conversation), *rev'd*, 232 F.3d 905 (Fed. Cir. 2000); *DGS Cont. Serv., Inc. v. United States*, 43 Fed. Cl. 227, 235 (1999) (allowing deposition concerning the "factual extent" of a telephone conference); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1339 (Fed. Cir. 2001) (ordering deposition of the CO "[i]n order to answer the question of whether there was a lack of rational basis for the contracting officer's decision").[7]

There are four documents currently in the AR related to the discussions the agency held with plaintiff about its proposal:  (1) the government's 12 January 2021 email to plaintiff seeking revised proposals and advising plaintiff to review the attached deficiency letter, AR at 2664; (2) the 12 January 2021 deficiency letter, which scheduled a negotiation call and listing seven discussion items, AR at 1644; (3) the government's 1 February 2021 email to plaintiff seeking final proposal revisions and advising plaintiff to review the attached request letter, AR at 2667; and (4) the 1 February 2022 request for final proposal revisions, which scheduled a negotiation call and listed one discussion item, AR at 1650.  These four nondescript documents provide, at most, a high-level outline of the topics addressed during the discussions.  The AR is otherwise silent as to what type of instruction the government gave plaintiff regarding its proposal (if any), the specific content of the discussions, whether the discussions led plaintiff "into the areas of [its] proposal[] requiring amplification or correction," and whether (or how) the government described any weaknesses or deficiencies in plaintiff's proposal.  *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 668 (2010) (citations omitted).  Without supplementation of the AR, the Court is unable perform an effective review of whether the discussions were meaningful under the FAR.  *See id.*; *ManTech Telecomms. & Info. Sys. Corp. v. United States*, 49 Fed. Cl. 57, 71 (2001), *aff'd*, 30 F. App'x 995 (Fed. Cir. 2002); *Dynacs Eng'g Co. v. United States*, 48 Fed. Cl. 124, 131 (2000); *Biospherics, Inc. v. United States*, 48 Fed. Cl. 1, 9 (2000); *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999), *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000).

"[T]he content of [the] conversations" the government had with plaintiff during the discussions "by [their] very nature would not be found in an agency record"—the Court's review

---

[7] Although "discovery in a bid protest" is not to be taken "lightly," it is also not uncommon.  *Diversified Maint. Sys.*, 93 Fed. Cl. at 804–05 (ordering depositions to determine the accuracy of a representation); *see, e.g.*, *Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 85–87 (2019) (surveying the case law and finding "inconsistencies" in the record could, in some circumstances, justify discovery); *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366 (2009) (supplementing the AR with declarations because, "standing uncorrected, the AR [wa]s erroneous and misleading[, and a]llowing a protest to be decided upon an AR which does not reflect what actually transpired would perpetuate error and impede and frustrate effective judicial review"), *opinion clarified*, 87 Fed. Cl. 654 (2009).  The need for discovery often arises where there are allegations of bias and bad faith because they, like the content of conversations, are rarely evidenced in an agency record.  *See, e.g.*, *Galen Med. Assocs., Inc. v. United States*, 56 Fed. Cl. 104, 109 (2003) (allowing depositions where plaintiff alleged a pattern of bias), *aff'd*, 369 F.3d 1324 (Fed. Cir. 2004); *J.C.N. Constr. Co. v. United States*, 60 Fed. Cl. 400, 405 n.8 (2004) (allowing depositions regarding asserted bias and de facto debarment), *aff'd*, 122 F. App'x 514 (Fed. Cir. 2005); *Cybertech Grp., Inc. v. United States*, 48 Fed. Cl. 638, 651 (2001) (allowing five depositions and an evidentiary hearing on allegations of bad faith); *Inforeliance Corp. v. United States*, 118 Fed. Cl. 744, 747, 750 (2014) (allowing several depositions after plaintiff "provided a declaration describing suspect conduct that supports the plaintiff's claim [of bad faith because] effective judicial review would be frustrated if the Court were not to allow discovery." (citing *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1381)); *Starry Assocs., Inc. v. United States*, 125 Fed. Cl. 613, 621, 624 (2015) (allowing four depositions based on allegations of bias).

of the AR confirms just that. *Orion Int'l Techs.*, 60 Fed. Cl. at 343–44. Accordingly, because the Court finds it cannot perform an effective review without supplementation of the AR, and the four declarations with which plaintiff and the government agree to supplement the AR comprise the accounts of four people who were in the discussions, the Court grants plaintiff's motion and the government's request to supplement the AR with the declarations. *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380; *AgustaWestland N. Am.*, 880 F.3d at 1332.[8] For these reasons, the Court also denies defendant-intervenor's motion to strike plaintiff's declarations.

### E. Supplementing the AR with Depositions

"[T]o resolve inconsistencies" in the record, plaintiff requested the opportunity to conduct depositions of the parties' declarants to determine what occurred during the discussions. Tr. at 55:12–17, 66:17; *see also* JSR at 3, ECF No. 67. Plaintiff clarified it is not arguing bad faith or bias but stated such is not required for depositions in a bid protest. Tr. at 64:19–67:9; *see also supra* note 7. The government stated it "does not believe that depositions . . . or further discovery is necessary," but continued: "[The declarations] may raise conflicting statements. There's certainly conflicts between the depiction[s] from Edward Welbourn[] and Megan Shulin." Tr. at 55:21–56:11. Defendant-intervenor likewise objected to any depositions. Tr. 77:18–20. The government maintained its objection to any discovery in the parties' 3 May 2022 JSR, ECF No. 77.

In a 2010 post-award bid protest, *Diversified Maintenance Systems*, this court found there were significant inconsistencies within the AR as to an awardee's status as a small business and, if left unaddressed, could allow a "noncompliant entity" to "perform a $65 million contract obtained under false pretenses." *Diversified Maint. Sys.*, 93 Fed. Cl. at 803–04. The Court held discovery was necessary to ascertain whether the awardee accurately represented itself as a small business at the time of offer and award. *Id.* The Court also determined "discovery may shed light on whether [the agency] acted rationally." *Id.* at 805. Based on an affidavit pertaining to a potential inaccuracy in the record, the Court granted plaintiff's motion for limited discovery for several items, including four depositions. *Id.* at 805–06. The Court stated plaintiff's "affidavits may be used to facilitate" the depositions. *Id.* at 805.

In a 2019 post-award bid protest, *Alaska Structures*, this court found the threshold for discovery is not "an actual misrepresentation within the record," but is instead "inconsistencies, *i.e.*, where different representations may conflict but could also both be true, and contradictions where one representation must be inaccurate but it is not apparent which one." *Alaska Structures*, 144 Fed. Cl. at 85. The court then surveyed the caselaw and determined a "finding of inaccurate representations [may] rel[y] on evidence extrinsic to the award decision[,]" and an "explicit contradiction should not be required to grant discovery." *Id.* at 85–86 (citing *Diversified Maint. Sys.*, 93 Fed. Cl. 794; *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471 (2012); *Algese 2 s.c.a.r.l. v. United States*, 125 Fed. Cl. 431 (2016)). The court then granted in

---

[8] *Cf. Jacobs Tech. Inc. v. United States*, 100 Fed. Cl. 198, 209 (2011) ("[T]he United States Court of Appeals for the Federal Circuit has recognized situations, although rare, where the Court may rely on declarations of contracting officers for purposes of determining whether the agency's action at issue in the bid protest was arbitrary and capricious." (citing *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1338–39)).

part plaintiff's motion to complete the AR based on an "inconsistency that cannot be resolved on the face of the existing record." *Id.* at 86.

The declarations in this case, while helpful for the Court's initial review of the discussions, left the Court and the parties still with unanswered questions at oral argument. Tr. at 51:15–53:16. For example, plaintiff's declarations state the government's brokers directed plaintiff to change its flood plain status and were not told doing so could render its proposal unacceptable. Pl.'s Mot. to Suppl. at 271 ¶ 6 (Decl. of Edward Welbourn, AR 2968, by plaintiff's internal pagination); Decl. of Timothy C. Hutchens at 3 ¶ 11. The government's declarations report that its brokers merely asked plaintiff to review and confirm its flood plain designation. Decl. of Kazi Rizvi at 2–3 ¶¶ 9–10; Decl. of Megan V. Shulin at 3 ¶ 10. The government's counsel agreed it would have been improper for the government's brokers to direct plaintiff to change its proposal to a 100-year flood plain status if plaintiff were not located in one, but disputes that the brokers gave that direction as plaintiff's declarations allege. Tr. 61:24– 62:6. Moreover, plaintiff's declarants claim there was no discussion about any other deficiency within its proposal. Pl.'s Mot. to Suppl. at 271 ¶ 7 (Decl. of Edward Welbourn, AR 2968, by plaintiff's internal pagination); Decl. of Timothy C. Hutchens at 3 ¶ 12. The government's declarants assert they discussed around seven different deficiencies in plaintiff's proposal with plaintiff's declarants. Decl. of Kazi Rizvi at 2 ¶¶ 5,7; Decl. of Megan V. Shulin at 2–3 ¶¶ 8–10. No party knows whether there was any discussion of the FEMA LOMR, the layers on the FEMA online maps, or the elevation certificate. Tr. at 51:15–53:16. Neither party knows whether any declarant was even aware of such items. *Id.*; Tr. at 54:19–55:11. Further, the government's Shulin declaration directly conflicts with her emails in the AR from 17 May 2021. *Compare* Decl. of Megan V. Shulin at 3 ¶ 10 (declaring she and another broker performed a flood plain check online prior to the 15 January 2021 call and determined plaintiff's property was in a 100-year flood plain), *with* AR at 2675 (Shulin, upon receiving the LOMR on 17 May 2021, stating she sent GSA's Regional Environmental Program Specialist, Ashish Desai, "multiple emails . . . months ago for him to do a [floodplain] check on this property and nothing came back from him."), *and* AR at 2674 (Shulin emailing again, "If Ashish had responded to our inquiries to do a floodplain check months ago we wouldn't be *blindsided*." (emphasis added)).

The Court supplemented the AR with the declarations because "the content of [the] conversations" the government had with plaintiff during the discussions "by [their] very nature would not be found in an agency record," so the Court could not otherwise perform an effective review. *See supra* Section IV.D.; *Orion Int'l Techs.*, 60 Fed. Cl. at 343–44; *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380; *AgustaWestland N. Am.*, 880 F.3d at 1332. Based on the foregoing discussion of the declarations and their relation to the AR, the Court finds there are numerous and significant inconsistencies, conflicts, and contradictions currently within the record as it relates to the discussions. *Alaska Structures*, 144 Fed. Cl. at 85–86; *Diversified Maint. Sys.*, 93 Fed. Cl. at 805–06. Accordingly, the Court finds it requires deposition testimony to perform an effective judicial review and grants plaintiff's motion to supplement the AR with deposition testimony on the discussions. *Orion Int'l Techs.*, 60 Fed. Cl. at 343–44; *Alaska Structures*, 144 Fed. Cl. at 85–86; *Diversified Maint. Sys.*, 93 Fed. Cl. at 805–06; *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380; *AgustaWestland N. Am.*, 880 F.3d at 1332.

**V.    Conclusion**

For the foregoing reasons, the Court:  **GRANTS in PART** and **DENIES in PART** plaintiff's motion to complete and supplement the administrative record, ECF No. 53; **DENIES** defendant-intervenor's motion to strike, ECF No. 75; **DENIES as MOOT** the government's motion to strike, ECF No. 78; and **DENIES as MOOT** defendant-intervenor's second motion to strike, ECF No. 80.  The Court **STRIKES** the government's 26 April 2022 supplement to the administrative record, ECF No. 70.  On or before **10 May 2022**, the government **SHALL FILE** a supplement to the administrative record containing:

- an unredacted copy of plaintiff's 10 June 2021 GAO protest record; and
- the declarations of Edward H. Welbourn IV, Timothy C. Hutchens, Kazi Rizvi, and Megan V. Shulin.

The Court authorizes, but does not require, the following limited discovery:

- a deposition of GSA broker, Megan V. Shulin, not to exceed ninety minutes, on or before 13 May 2022 via videoconference or in-person, with counsel dividing time as follows:  sixty minutes for plaintiff, and thirty minutes for the government and intervenor to apportion as they deem appropriate; and
- a deposition of CBRE broker, Edward H. Welbourn IV, not to exceed ninety minutes, on or before 13 May 2022 via videoconference or in-person, with counsel dividing time as follows:  sixty minutes for the government and intervenor to apportion as they deem appropriate, and thirty minutes for plaintiff.

Given the significant discrepancies in the declarations pertaining to the discussions, and the possibility that further discrepancies may arise during depositions, the Court will allow the parties to each call one witness for in-person testimony at oral argument on the cross-MJARs, if they deem it appropriate.  The Court suggests the parties consider this as an alternative to deposition testimony and perhaps a reason not to complete depositions.  Accordingly, the parties **SHALL FILE** a JSR on or before **11 May 2022** informing the Court as to whether any party intends to take one or both depositions, and/or whether any party intends to call a witness for live testimony at the cross-MJARs oral argument.  The JSR shall also include three days and times during July 2022 when the parties (and their witnesses, if any) are all available for oral argument on the cross-MJARs.

The Court **LIFTS** the stay on the parties MJARs and the defendant-intervenor's motion to dismiss, ECF Nos. 54, 63, 64.  *See* Order, ECF Nos. 58, 65.  The Court adopts the following schedule as proposed by the parties:

| Event | Date |
|---|---|
| The government and defendant-intervenor file amended responses to plaintiff's MJAR and cross-MJARs | 26 May 2022 |
| Plaintiff files its response to the government and defendant-intervenor's amended cross-MJARs and reply in support of its MJAR | 9 June 2022 |

| | |
|---|---|
| The government and defendant-intervenor file replies in support of their amended cross-MJARs | 23 June 2022 |
| Oral Argument | July 2022 on a day and time to be determined at the National Courts Building |

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge